IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

SHANNON DOUGLAS ROBINSON,
     Petitioner,

vs.                           Case No.:  5:16cv65/LAC/EMT

JULIE L. JONES
and FLORIDA COMMISSION
ON OFFENDER REVIEW,
     Respondents.
_____/

## ORDER and REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus and supporting memorandum, filed pursuant to 28 U.S.C. § 2254 (ECF Nos. 1, 2). Respondent Florida Commission on Offender Review ("FCOR") filed an answer and relevant portions of the state court record (ECF No. 13).  Respondent Jones filed a limited answer deferring to the FCOR's answer (ECF No. 12).  Petitioner filed a reply to the FCOR's answer (ECF No. 16).  Petitioner subsequently filed a motion for summary judgment (ECF No. 17) and a "Motion for Judicial Notice of Supplemental Authority" (ECF No. 18).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.

*See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).   After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.   It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 13).[1]   Following a jury trial in the Circuit Court for Polk County, Florida, Case No. 1989-CF-530, Petitioner was adjudicated guilty of one count of burglary stemming from offense conduct that occurred on February 2, 1989 (Ex. A).   On July 6, 1989, Petitioner was sentenced as a habitual offender to a term of thirty (30) years in prison, with pre-sentence jail credit of 154 days (*id.*).

Petitioner reached his tentative release date on April 1, 2012, through the accrual of actual time served and earned gain time, and was released from FDOC custody on conditional release supervision, administered by the FCOR (formerly the

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with the FCOR's answer (ECF No. 13).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Florida Parole Commission), for the amount of time equal to the gain time he had

accrued (approximately eighty-one (81) months), with his supervision to expire on

January 26, 2019 (Ex. B).  On August 23, 2013, the FCOR issued a warrant for

Petitioner's arrest for violating the terms of his conditional release (Ex. F).  Petitioner

was charged with one violation of Condition 4(b), by using and/or possessing

marijuana, and three violations of Condition 7, by failing to obey the law (*id.*).

Petitioner waived his right to a violation hearing (*id.*).  On February 26, 2014, the

FCOR revoked Petitioner's conditional release supervision effective August 21, 2013,

ordered him returned to FDOC custody, denied credit for time Petitioner spent on

conditional release, but granted him credit for the period October 3, 2012 to December

6, 2012 (Ex. G).[2]

On August 14, 2014, Petitioner filed a petition for writ of habeas corpus in the

Okaloosa County Circuit Court, Case No. 2014-CA-3103, raising the same ex post

facto claim he asserts in the instant federal habeas petition (Ex. H1).  The state circuit

court denied the petition on November 19, 2014 (Ex. H4).  Petitioner sought review

by the Florida First District Court of Appeal ("First DCA") by filing a petition for writ

---

[2] The FCOR's denial of credit for time Petitioner spent on conditional release, plus Petitioner's loss of gain time due to a disciplinary report, apparently extended Petitioner's release date to March 12, 2020 (*see* Ex. M).

of certiorari, Case No. 1D14-5810 (Ex. I1).  On July 21, 2015, the First DCA denied the petition on the merits (Ex. I4).  *See* Robinson v. Fla. Comm'n on Offender Review, 171 So. 3d 707 (Fla. 1st DCA 2015) (Table).  The mandate issued August 18, 2015 (*id.*).  On October 20, 2015, Petitioner filed a petition for review in the Supreme Court of Florida, Case No. SC15-1964 (Ex. J1).  The state supreme court dismissed the petition for lack of jurisdiction on October 27, 2015 (Ex. J2).  *See* Robinson v. Fla. Comm'n on Offender Review, 181 So. 3d 634 (Fla. 2015) (Table).

On October 19, 2015, Petitioner filed a habeas petition in the First DCA, again raising the same ex post facto claim he asserts in the instant federal habeas petition (Ex. K1).  The First DCA transferred the petition to the Okaloosa County Circuit Court, Case No. 2015-CA-4160 (*see* Ex. K2).  The circuit court denied the petition on December 8, 2015 (*id.*).  Petitioner sought review by the First DCA by filing a petition for writ of certiorari, Case No. 1D16-0159 (Ex. L1).  On April 20, 2016, the First DCA denied the petition on the merits (Ex. L4).  *See* Robinson v. Fla. Comm'n on Offender Review, No. 1D16-0159, 2016 WL 1579299 (Fla. 1st DCA 2016) (Table).

Petitioner filed the instant habeas action on February 25, 2016, while the state habeas proceeding was pending (*see* ECF No. 1 at 1).  In the instant petition, Petitioner challenges his placement on conditional release supervision, on the ground

that the Florida Supreme Court's interpretation of the conditional release statute, upon which the FCOR relied in imposing Petitioner's conditional release supervision, violated the Constitutional prohibition against ex post facto laws (*see* ECF No. 1 at 5; ECF No. 2 at 3–7).

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme

---

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). "Clearly established Federal law, includes only the holdings, as opposed to the dicta, of the Supreme Court's decisions." Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) (citation omitted).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of

the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  However, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  See Woods, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's

decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, *supra* at 1291 (citing Richter).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.

*See* Richter, 562 U.S. at 102; *see also* Gill, *supra,* at 1292 (the federal district court

may rely on grounds other than those articulated by the state court in determining that

habeas relief was not warranted, so long as the district court did not err in concluding

that the state court's rejection of the petitioner's claims was neither an unreasonable

application of a Supreme Court holding nor an unreasonable determination of the

facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the

merits in State court where that adjudication "resulted in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified

that: "a decision adjudicated on the merits in a state court and based on a factual

determination will not be overturned on factual grounds unless objectively

unreasonable in light of the evidence presented in the state-court proceeding."

Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003)

(dictum).

When performing its review under § 2254(d), the federal court must bear in

mind that any "determination of a factual issue made by a State court shall be

presumed to be correct," and the petitioner bears "the burden of rebutting the

presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see, e.g.,* <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); <u>Jones v. Walker</u>, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* <u>Gill</u>, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied § 2254(d) does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* <u>Panetti v. Quarterman</u>, 531 U.S. 930, 953, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same). The writ will not issue unless

the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claim.

III.    PETITIONER'S CLAIM

> Ground One:  "The petitioner was convicted and sentenced on July 6, 1989 and subsequently released on April 1, 2012, and placed on conditional release pursuant to a judicial construction rendered in 1997 and retroactively applied to the petition in violation of the fair warning principle.  Based on the language in the pre-1988 version of Fla. Stat. 947.1405 (Fla. 1988), the petitioner did not qualify for conditional release.  But a judicial construction placed on the statute in 1997 and retroactively applied is the only reason the petitioner is being unlawfully confined at present."

Petitioner claims that his placement on conditional release supervision on April 1, 2012, violated the Ex Post Facto Clause (ECF No. 1 at 5; ECF No. 2 at 3–7).  He contends the conditional release statute in effect at the time of his offense conduct, February 2, 1989, provided that an inmate was subject to conditional release supervision when (1) he had been convicted of a Category 1, 2, 3, or 4 offense, **and** (2) he was sentenced as a habitual offender or served a prior felony commitment, *see* Fla. Stat. § 947.1405 (eff. July 1, 1988) (ECF No. 2 at 3–7; ECF No. 16 at 2–16).  Petitioner asserts that burglary, the offense of which he was convicted, was not a Category 1, 2, 3, or 4 offense, but a Category 5 offense; therefore, he was not subject to conditional release supervision (*id.*).  Petitioner acknowledges that in 1998, the

Florida Supreme Court held that an inmate convicted as a habitual offender but not convicted of a Category 1, 2, 3, or 4 offense was subject to placement on conditional release because "habitualization is a separate, free-standing criterion for conditional release under section 947.1405(2), Florida Statutes (1989)" (*see id.* (citing <u>Deason v. Fla. Dep't of Corr.</u>, 705 So. 2d 1374 (Fla. 1998)).  Petitioner contends, however, that the <u>Deason</u> decision essentially rewrote section 947.1405 to require imposition of supervision on all habitual offenders whose offenses were committed prior to issuance of that decision, thereby retroactively increasing his punishment, in violation of <u>Bouie v. City of Columbia</u>, 378 U.S. 347, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964) (*id.*).

Respondent contends the Florida Supreme Court's interpretation of the conditional release statute, set forth in <u>Deason</u>, was not a retroactive application of the statute; rather, the court merely clarified the legislative intent of the statute (ECF No. 13 at 6–14).  Respondent contends the state courts' rejection of Petitioner's ex post facto claim was not contrary to or an unreasonable application of clearly established federal law (*id.*).

A.    Clearly Established Federal Law

Article I, Section 10, of the United States Constitution prohibits states from enacting ex post facto laws.  Under the Ex Post Facto Clause, a state may not

retroactively apply any law that "inflicts a greater punishment, than the law annexed

to the crime, when committed." Calder v. Bull, 3 U.S. (3 Dall.) 386, 390, 1 L. Ed. 648

(1789).  Such laws implicate the core ex post facto concerns of "the lack of fair notice

and governmental restraint when the legislature increases punishment beyond what

was prescribed when the crime was consummated."  Lynce v. Mathis, 519 U.S. 433,

441, 117 S. Ct. 891, 137 L. Ed. 2d 63 (1997) (quoting Weaver v. Graham, 450 U.S.

24, 30, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981)) (emphasis in original).  As the

Supreme Court stated in Lynce,

> To fall within the ex post facto prohibition, a law must be
> retrospective—that is, "it must apply to events occurring before its
> enactment"—and it "must disadvantage the offender affected by it,"
> [Weaver, 450 U.S.] at 29, 101 S. Ct., at 964, by altering the definition of
> criminal conduct or increasing the punishment for the crime, *see* Collins
> v. Youngblood, 497 U.S. 37, 50, 110 S. Ct. 2715, 2723, 111 L. Ed. 2d 30
> (1990).

519 U.S. at 441.  The question of whether a particular legislative change produces

consequences sufficient to invoke the prohibitions of the Ex Post Facto Clause is a

matter of "degree."  Beazell v. Ohio, 269 U.S. 167, 46 S. Ct. 68, 70 L. Ed. 216 (1925).

It is clear that not every legislative change that "disadvantages" an offender or

affects a prisoner's "opportunity to take advantage of the provisions for early release"

violates the Constitution.  Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 115 S. Ct.

1597, 131 L. Ed. 2d 588 (1995).  Rather, a law must produce "a sufficient risk of

increasing the measure of punishment attached to the covered crimes." *Id.*, 514 U.S.

509.  While there is no exact formula for determining when a particular legislative

change produces a sufficient effect on punishment to fall within the prohibitions for

the Ex Post Facto Clause, the United States Supreme Court has made clear that the

risk of affecting a prisoner's actual term of confinement must be more than

"speculative and attenuated." *Id.*  Under <u>Morales</u>, the statute must affect the original

punishment and it must produce a sufficient risk of increasing the original

punishment. *Id.*

The prohibition against ex post facto laws applies directly to state legislatures,

but the Supreme Court has held that the Due Process Clause protects criminal

defendants against action by the judiciary that would contravene the Ex Post Facto

Clause if done by the legislature.  <u>Marks v. United States</u>, 430 U.S. 188, 191–92, 97

S. Ct. 990, 51 L. Ed. 2d 260 (1977); <u>Bouie v. City of Columbia</u>, 378 U.S. 347,

353–54, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964).  As the Supreme Court stated in

<u>Bouie</u>:

> [A]n unforeseeable judicial enlargement of a criminal statute, applied
> retroactively, operates precisely like an ex post facto law, such as Art. I,
> § 10, of the Constitution forbids. . . . If a state legislature is barred by the
> Ex Post Facto Clause from passing such a law, it must follow that a State

Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.

Bouie, 378 U.S. at 353–54.

B.      Federal Review of State Court Decision

Petitioner presented his ex post facto claim in both habeas petitions he filed in the Okaloosa County Circuit Court (Exs. H1, K1).  The circuit court denied both petitions on the merits (*see* Exs. H4, K2).  Petitioner sought review of both decisions in the First DCA (*see* Exs. I1, L1).  The First DCA denied relief on the merits in both cases (*see* Exs. K2, L4), with the last decision issued on April 20, 2016, in Case No. 1D16-1059 (Ex. L4).  Because the last state court adjudication on the merits was the First DCA's decision in Case No. 1D16-1059, that is the decision that is subject to review in this § 2254 action.  *See* Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1232 (11th Cir. 2016) (when deciding whether a state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as would warrant federal habeas relief, the court reviews one decision:  the last state-court adjudication on the merits) (citing Greene v. Fisher, — U.S. —, 132 S. Ct. 38, 45, 181 L. Ed. 2d 336 (2011)).

Here, the First DCA summarily denied Petitioner's ex post facto claim on the merits, without offering a written explanation for its decision (*see* Ex. L4).  Where a

state court denies relief without providing an explanation or its reasoning, the habeas petitioner must show that there was no reasonable basis for the state court's decision. *See* Harrington, 562 U.S. at 98. The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See id.* at 102; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

At the time of Petitioner's offense conduct, February 2, 1989, the Florida Legislature had enacted section 947.1405, known as the Conditional Release Program Act, which provided in relevant part:

> (2) Any inmate who is convicted of a crime committed on or after October 1, 1988, which crime is or was contained in category 1, category 2, category 3, or category 4 of Rule 3.701 and Rule 3.988, Florida Rules of Criminal Procedure, and who has served at least one prior felony commitment at a state or federal correctional institution or is sentenced as a habitual or violent habitual offender pursuant to s. 775.084, shall,

upon reaching the tentative release date or provisional release date, whichever is earlier, as established by the Department of Corrections, be released under supervision subject to specified terms and conditions.

Fla. Stat. § 947.1405 (1989).

Also, various amendments to existing laws were added in 1988, including subsection (11) of section 921.001, the statute relating to the state sentencing commission, which provided as follows:

> A person who is convicted of a crime committed on or after October 1, 1988, shall be released from incarceration only:
> (a) Upon expiration of his sentence;
> (b) Upon expiration of his sentence as reduced by accumulated gain-time;
> (c) As directed by an executive order granting clemency;
> (d) Upon attaining the provisional release date; or
> (e) Upon placement in a conditional release program pursuant to s. 947.1405.

Fla. Stat. § 921.001(11) (1989).[4]  The legislature also added subsection two (2) to section 944.291, the statute governing release of prisoners by reason of gain-time allowances, to provide that inmates who are conditional release eligible are prohibited from being totally released from service of a sentence by mere gain-time accrual or application:

---

[4] Section 921.001(11), Fla. Stat. (Supp. 1988) is currently section 921.001(10)(a), Fla. Stat. (2008).  Section 921.001(10)(a), Fla. Stat. (2008) essentially mirrors the 1988 version of section 921.001(11), except that the applicable dates of the committed crime include those crimes committed on or after October 1, 1983 but before January 1, 1994.

Case No.:  5:16cv65/LAC/EMT

(2) Any prisoner who is convicted of a crime committed on or after October 1, 1988, which crime is contained in category 1, category 2, category 3, or category 4 of Rule 3.701 and Rule 3.988, Florida Rules of Criminal Procedure, and who has served at least one prior felony commitment at a state or federal correctional institution, or is a habitual or violent habitual offender pursuant to s. 775.084, may only be released under conditional release supervision as described in Chapter 947. Not fewer than 90 days prior to the tentative release date, the department shall provide the commission with the name and inmate identification number for each eligible inmate.

Fla. Stat. § 944.291(2) (1989).[5]

The legislature also amended the habitual offender statute, section 775.084, with language that appeared to conflict with the conditional release statute, section 947.1405. The amendment to section 775.084 provided:

A sentence imposed under this section shall not be subject to the provisions of s. 921.001. The provisions of chapter 947 shall not be applied to such person. A defendant sentenced under this section shall not be eligible for gain-time granted by the Department of Corrections except that the department may grant up to 20 days of incentive gain-time each month as provided for in s. 944.275(4)(b).

Fla. Stat. § 775.084(4)(e) (1989).[6]

Although this court will decide under federal law whether an ex post facto violation has occurred, it must accept the Florida courts' interpretation of the state's

---

[5] The same version of Section 944.291(2), Fla. Stat. exists today.

[6] This language was removed from the statute in 1993.

own statutes.  *See* <u>Missouri v. Hunter</u>, 459 U.S. 359, 368, 103 S. Ct. 673, 74 L. Ed. 2d

535 (1983).  According to the Florida Supreme Court, Florida courts are obligated to

adopt an interpretation of state statutes that harmonizes two related, if conflicting,

statutes while giving effect to both.  *See* <u>Jones v. State</u>, 813 So. 2d 22, 25 (Fla. 2002)

(citation omitted).  Additionally, a specific statutory provision controls over a general

statutory provision.  *Id.*  As previously noted, both section 775.084(4)(e), the habitual

offender statute, and section 947.1405, the conditional release statute, were enacted

in the 1988 legislative session.  It is possible to harmonize sections 947.1405 and

775.084 by recognizing that "chapter 947," referenced in the habitual offender statute,

applied not only to conditional release but to other programs administered by the

Commission, such as parole.  Inasmuch as the provisions of section 947.1405 are

specific, and the reference to "chapter 947" in section 775.084(4)(e) is general, the

specific language of section 947.1405 controls over the more general sentencing

provisions of section 775.084.

Also important to the statutory analysis is the fact that in the 1993 legislative

session, the Florida Legislature recognized the possibly conflicting statutory

provisions of sections 775.084(4)(e) and 947.1405, and amended section

775.084(4)(e) to read in pertinent part: "The provisions of s. 947.1405 shall apply to

persons sentenced as habitual felony offenders and persons sentenced as habitual violent felony offenders." Fla. Stat. § 775.084(4)(e) (1993).  In <u>Lowry v. Parole and Prob. Comm'n</u>, 473 So. 2d 1248, 1250 (Fla. 1985), the Florida Supreme Court held that when an amendment to a statute is enacted soon after controversies as to the interpretation of the original act arise, a court may consider that amendment as a legislative interpretation of the original law and not as a substantive change thereof, and it is proper for the court to consider subsequent legislation in arriving at the proper interpretation of the prior statute.  *Id.* at 1250 (citations omitted); *see also* <u>Parker v. State</u>, 406 So.2d 1089 (Fla. 1981) (recognizing that the court has the right and duty, in arriving at the correct meaning of a prior statute, to consider subsequent legislation).

Utilizing these rules of statutory construction, the Florida Supreme Court held in <u>Deason v. Fla. Dep't of Corr.</u>, that the Florida legislature intended habitualization to be a separate, free-standing criterion for conditional release.  705 So. 2d at 1375.  This interpretation did not enlarge the conditional release statute, it merely clarified the legislature's intent regarding the inclusion of all habitual felony offenders in the conditional release program.  Therefore, Petitioner failed to demonstrate that the

Deason decision constituted a retroactive expansion of criminal statutes, in violation of the Ex Post Facto Clause.

Additionally, Petitioner's placement on supervision did not constitute an increase in punishment, for ex post facto purposes. The character of conditional release is defined by state law. As to that, the Florida Supreme Court has said, "conditional release is not an increased punishment program at all, but rather an assistance program designed to 'help these former inmates in bridging the gap between prison and the outside world.'" Mayes v. Moore, 827 So. 2d 967, 971 (Fla. 2002) (quoting Duncan v. Moore, 754 So. 2d 708, 710 (Fla. 2000)). The Mayes court went on to state:

> [C]onditional release is not a form of sentence, and it is not imposed by a court. Although the statute may impose an undesirable condition upon the release of those subject to the statutory requirements by converting gain time that might be awarded into postrelease supervision, neither gain time nor conditional release is a true part of a criminal sentence. An inmate's eligibility for conditional release is established by statute. Inmates who are subject to conditional release are identified and their placement on conditional release is required, not by the sentencing court, but by the Parole Commission. Thus, for all of these reasons, we conclude that conditional release is not a recidivist program which imposes an enhanced criminal penalty or sentence.

*Id.*

As previously noted, Petitioner's offenses were committed in February of 1989, and he was sentenced as a habitual offender later that year; therefore, according to state law in existence at the time he committed his offenses, his sentence did not expire when he reached his tentative release date.  The original sentence remained in effect, and when he reached his tentative release date, he was required to serve a portion of his sentence, equivalent to the amount of gain time he had earned, under supervision by the FCOR.  Indeed, at the time of Petitioner's release on conditional release on April 1, 2012, he had actually served less than twenty-three (23) years of the 30-year sentence originally imposed by the sentencing court on July 6, 1989. Through the benefit of gain time, Petitioner was released from imprisonment nearly seven (7) years early to serve the rest of his sentence on conditional release supervision.  The Florida Supreme Court's decision in Deason did not increase Petitioner's punishment beyond what was prescribed when he committed the crimes in February of 1989, or beyond the sentence originally imposed by the trial court.

Petitioner failed to demonstrate that the First DCA's adjudication of his ex post facto claim, with respect to his placement on conditional release supervision, was contrary to or an unreasonable application of clearly established federal law. Therefore, Petitioner is not entitled to federal habeas relief.

IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

Petitioner's Motion for Judicial Notice of Supplemental Authority (ECF No. 18) is **GRANTED**.

And it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.    That Petitioner's motion for summary judgment (ECF No. 17) be **DENIED**.

3.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 1ˢᵗ day of December 2016.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

**<u>NOTICE TO THE PARTIES</u>**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**